**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA,

v.                                                                    3:23-cr-478 (BKS/TWD)

PATRICK DAI,

                              Defendant.

_____

**Appearances:**

*For the United States of America:*
Carla B. Freedman
United States Attorney
Geoffrey J. L. Brown
Michael D. Gadarian
Stephen C. Green
Assistant United States Attorneys
100 South Clinton Street
Syracuse, New York 13261

*For Defendant Patrick Dai:*
Lisa A. Peebles
Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Defendant Patrick Dai is charged with transmitting interstate threatening communications

in violation of 18 U.S.C. § 875(c). (Case No. 23-mj-632, Dkt. No. 1).[1] The affidavit in support of

the complaint details threatening messages Defendant is alleged to have posted online. (*Id.* at 2–

_____

[1] Unless otherwise noted, citations to filings refer to the docket of this case, Case No. 23-cr-478; citations to the docket
of the magistrate judge proceeding, Case No. 23-mj-632, include that case number.

9). The affidavit outlines the investigation into Defendant, including the recovery of internet protocol addresses linking Defendant to the threatening messages and an FBI interview of Defendant during which he admitted to posting them. (*Id.* at 2–8).

The Government moved for detention at Defendant's initial appearance on November 1, 2023, and Magistrate Judge Thérèse Wiley Dancks held a detention hearing on November 9, 2023. (Case No. 23-mj-632, Text Minute Entries dated November 1, and 9, 2023). At the conclusion of the hearing, Magistrate Judge Dancks granted the Government's motion and ordered that Defendant be detained. (Case No. 23-mj-632, Dkt. No. 19, at 53–54). On November 22, 2023, Defendant appealed Magistrate Judge Dancks' order. (Case No. 23-mj-632, Dkt. No. 22). Defendant's appeal is fully briefed. (Dkt. Nos. 2–4).

As set forth below, the Court finds that the detention hearing was authorized under 18 U.S.C. § 3142(f)(1)(A). The Court further finds that the Government has shown by a preponderance of the evidence that Defendant poses a risk of non-appearance and by clear and convincing evidence that Defendant poses a danger to the safety of other persons and the community and that no condition or combination of conditions can reasonably mitigate these risks. Accordingly, Defendant's appeal is denied.

## II.     STANDARD OF REVIEW

The Bail Reform Act of 1984 authorizes and sets forth the procedures for pretrial detention of a criminal defendant. *See generally* 18 U.S.C. §§ 3141 *et seq.* If the Government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). First, the court must determine whether a detention hearing is authorized. *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987). A detention hearing is authorized only if the Government establishes by a preponderance of the evidence that the case involves one of the offenses enumerated in § 3142(f)(1) or that the

defendant presents certain risk factors identified in § 3142(f)(2). *See United States v. Dillard*, 214 F.3d 88, 90–91 (2d Cir. 2000); *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) ("[T]he Government must establish by a preponderance of the evidence that it is entitled to a detention hearing." (citing *Friedman*, 837 F.2d at 49)). Second, if the court determines that a detention hearing is authorized, the court must consider whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community by applying four factors listed in § 3142(g). *See United States v. Berrios–Berrios*, 791 F.2d 246, 249 (2d Cir. 1986) (noting that the Bail Reform Act codified the "traditional presumption favoring pretrial release for the majority of Federal defendants") (quotation omitted). A defendant awaiting trial must be detained if the court concludes that no condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community, and released if the court concludes otherwise. 18 U.S.C. § 3142(e).

If a magistrate judge orders that a defendant awaiting trial be detained, the defendant may file "a motion for revocation or amendment of the order," and the motion must be "promptly determined." 18 U.S.C. § 3145(b). A district court reviews *de novo* a magistrate judge's pretrial detention order. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *see United States v. Rentas*, 889 F. Supp. 579, 579 (N.D.N.Y. 1995) (citing *Leon* and concluding that "such motions should be accorded substantially *de novo* review"). A district court should not simply defer to the judgment of the magistrate judge, but rather must reach its own independent conclusions. *Leon*, 766 F.2d at 80. When conducting its *de novo* review, a district court may rely on the record developed before the magistrate judge and may also accept additional evidence. *United States v. Colombo*, 777 F.2d 96, 98 n.1 (2d Cir. 1985).

III.     **DISCUSSION**

A.     **Detention Hearing**

The first question is "whether the government has demonstrated by a preponderance of the evidence that a detention hearing was warranted in this case." *United States v. O'Neill*, 144 F. Supp. 3d 428, 431 (W.D.N.Y. 2015) (quoting *United States v. Stevens*, No. 4-cr-222, 2005 WL 483387, at *3, 2005 U.S. Dist. LEXIS 7215, at *8 (W.D.N.Y. Mar. 2, 2005)). The Government must establish by a preponderance of the evidence that the case involves one of the offenses enumerated in § 3142(f)(1) or that the defendant presents a serious risk of flight, obstruction of justice, or threats to a witness or juror. *See Friedman*, 837 F.2d at 49.

Here, the Government argues that a detention hearing was authorized on two bases: (1) under § 3142(f)(1)(A), as the case involves a crime of violence; and (2) under § 3142(f)(2)(A), as Defendant presents a serious risk of flight. (*See* Dkt. No. 3). Defendant argues that this case does not involve a crime of violence and that he does not present a serious risk of flight. (*See* Dkt. No. 2).

1.     **18 U.S.C. § 3142(f)(1)(A): Crime of Violence**

Section 3142(f)(1)(A) requires a court to hold a detention hearing upon a Government motion in a case that involves "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." The Government argues that the crime Defendant is charged with—transmitting interstate threatening communications in violation of § 875(c)—falls within § 3142(f)(1)(A) as a crime of violence. (Dkt. No. 3, at 2–4). Defendant contends that § 875(c) is not a crime of violence and, even if it is, that the "10 years or more" limiting phrase applies as a series qualifier to each category listed in § 3142(f)(1)(A), therefore excluding § 875(c) —which carries a maximum sentence of five years—from its reach. (Dkt. No. 2, at 3–8).

The Bail Reform Act uses the "phrase ['crime of violence'] as a term of art and provides in paragraph 3156(a)(4) a special definition that extends substantially beyond the conventional meaning of 'crime of violence.'" *Dillard*, 214 F.3d at 90–91. Therefore, the Court must consider whether § 875(c) is a crime of violence as that term is defined in § 3156(a)(4).

A crime of violence is defined in § 3156(a)(4) as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or] (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.]"[2] 18 U.S.C. § 3156(a)(4).

The Court must apply a categorical analysis in determining whether transmitting threatening communications constitutes a "crime of violence" for the purposes of § 3142(f)(1)(A). *Watkins*, 940 F.3d at 163. This analytical framework requires the court to look "not to the facts of the particular . . . case," but to the statutory definition of the crime. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted). If the charged offense does not "fit squarely within the statutory definition of a 'crime of violence,' . . . the court may not conduct a detention hearing [on crime of violence grounds]." *United States v. Carter*, 996 F. Supp. 260, 262 (W.D.N.Y. 1998) (quoting *United States v. Gloster*, 969 F. Supp. 92, 94 (D.D.C. 1997). That said, where a case involves a divisible statute—one with "multiple, alternative versions of the crime"—courts use the "modified categorical analysis" and conduct a limited review of the record to determine which alternative is at stake. *See Descamps v. United States*, 570 U.S. 254, 262 (2013); *Lanferman v. Bd. of Immigr. Appeals*, 576 F.3d 84, 88 (2d Cir. 2009) ("In some instances . . . a statute may be subject to what we have termed the 'modified

---

[2] The definition also includes certain felonies not relevant here. *See* 18 U.S.C. § 3156(a)(4)(C).

categorical approach,' which allows for limited review of the record."); *United States v. Santoro*, 359 F. Supp. 3d 122, 127 n.11 (D. Me. 2019) (considering whether 18 U.S.C. § 875(c) is a crime of violence and noting that "where the crime has two or more alternative elements (a so-called divisible statute), I am permitted to look at limited documents to determine which alternative is at stake.").

Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." "Threat to injure" and "threat to kidnap" are alternative elements for conviction under § 875(c). *See Santoro*, 359 F. Supp. 3d at 127 n.11. Therefore, § 875(c) is divisible and the modified categorical analysis should be used to determine whether § 875(c) is an offense that "has as an element . . . the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A). Here, the complaint charges threats to injure. (*See* Case No. 23-mj-632, Dkt. No. 1). Thus, the relevant element is the threat to injure—not a threat to kidnap—and the Court need not consider the threat to kidnap element in determining whether § 875(c) is a crime of violence. *See Tomkins v. United States*, No. 16-cv-7073, 2018 WL 1911805, at *6, 2018 U.S. Dist. LEXIS 67665, at *17–18 (N.D. Ill. Apr. 23, 2018) (noting that § 876(b)'s analogous prohibition against mailed threats is divisible and concluding in that instance that the court need only consider the element of a threat to injure in determining whether the offense is a crime of violence).

Section 875(c) is a "crime of violence" under the Bail Reform Act if it has among its elements the threatened use of physical force against the person of another. *See* 18 U.S.C.

§ 3156(a)(4)(A). The elements of § 875(c) are: (1) the knowing transmission in interstate commerce of a communication, *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999); (2) "the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury," *id.*; and (3) "the defendant transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," *Elonis v. United States*, 575 U.S. 723, 740 (2015); *see also United States v. Segui*, No. 19-cr-188, 2019 WL 8587291, at *5, 2019 U.S. Dist. LEXIS 230551, at *10 (E.D.N.Y. Dec. 2, 2019). Although there is no case within the Second Circuit directly on point, other federal courts have found that these elements include the threatened use of physical force. *See, e.g.*, *United States v. Capriotti*, No. 21-cr-16, 2021 WL 229660, at *4, 2021 U.S. Dist. LEXIS 12223, at *11–12 (N.D. Ill. Jan. 22, 2021) (finding "it impossible to imagine proof of a violation of Section 875(c) without a threat of the use of physical force against a person, given that the statute minimally includes a threat to injure another person."); *Santoro*, 359 F. Supp. 3d at 127 (observing that "the defendant has not explained how one can threaten to injure the person of another without such a threat implying the use of violent force to do so"). Additionally, other federal courts have consistently found that § 876(c)—a parallel statute criminalizing mailed threats—is a crime of violence. *See, e.g.*, *United States v. Chapman*, 866 F.3d 129, 135 (3d Cir. 2017) (finding that "knowingly mailing a communication threatening to injure the person of the addressee or of another necessarily threatens the use of physical force."); *United States v. Haileselassie*, 668 F.3d 1033, 1035 (8th Cir. 2012) (noting that "an element of § 876(c) is the threat to use force that in the ordinary case is violent physical force").

To find for Defendant on this question "there must be 'a realistic probability, not a theoretical possibility,' that [§ 875(c)] could be applied to conduct that does not constitute a

crime of violence." *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)). "To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy." *Id.* (citing *Moncrieffe*, 569 U.S. at 190–91). Defendant asserts that "[u]sing physical force against a person does not necessarily result in an injury, and suffering an injury does not necessarily require the use of physical force." (Dkt. No. 2, at 4). But § 875(c) requires a "threat to injure the *person* of another," (emphasis added), and thus "by its plain terms does not criminalize threats to cause monetary or emotional injuries." *See Tomkins*, 2018 WL 1911805, at *8, 2018 U.S. Dist. LEXIS 67665, at *23. Moreover, the Supreme Court has noted that "'violent force' just means 'force capable of causing physical pain or injury to another person.'" *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). And § 875(c) requires that the communication contain a threat to injure the person of another, which would amount to a threat to use force capable of causing physical pain or injury. Thus, Defendant fails to explain how one can threaten to injure the person of another without such threat suggesting the use of violence. Accordingly, the Court finds that § 875(c) has among its elements the threatened use of physical force and concludes that § 875(c) is a "crime of violence" under the Bail Reform Act.

Defendant argues that even if § 875(c) is a crime of violence the "10 years or more" limiting phrase applies as a series qualifier to each category listed in § 3142(f)(1)(A), therefore excluding § 875(c)—which carries a maximum sentence of five years—from its reach.[3] (Dkt. No. 2, at 5–8). The Court disagrees.

---

[3] Section 3142(f)(1)(A) applies to cases involving "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed."

In *Lockhart v. United States*, the Supreme Court analyzed a similarly structured sentence in § 2252(a)(4) and determined that the limiting phrase at the end of a list in that sentence modified only the one item immediately preceding it. 577 U.S. 347, 349 (2016). The Supreme Court explained that when "interpret[ing] statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent'" which "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Id.* at 351 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). "[T]he rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *Id.* at 352 (quoting *Barnhart*, 540 U.S. at 26). For instance, the Supreme Court has noted that a limiting phrase can be interpreted as a "series qualifier" where the phrase is "applicable as much to the first and other words as to the last." *Paroline v. United States*, 572 U.S. 434, 447 (2014).

Here, however, the "10 years or more" limiting phrase cannot be applicable to the second category in the list because the penalties for offenses in that category exceed ten years. Moreover, the legislative history of § 3142(f)(1)(A) counsels in favor of applying the rule of last antecedent. *See Santoro*, 359 F. Supp. 3d at 125 (explaining that "[u]ntil December 2004, only crimes of violence were referred to in this subsection, and there was no prison time limitation," and that "[n]othing in later amendments shows that in enlarging the mandatory detention list Congress was trying to narrow the crimes of violence category."). Consequently, the Court finds that the rule of the last antecedent is the appropriate canon of statutory interpretation to apply in this instance and that the "10 years or more" limiting phrase in § 3142(f)(1)(A) applies only to the item that immediately precedes it—and not to a crime of violence.

Based on the foregoing, the Court concludes that the Government has satisfied its burden of establishing by a preponderance of the evidence that it was entitled to a detention hearing under § 3142(f)(1)(A).

## 2.    18 U.S.C. § 3142(f)(2)(A): Serious Risk of Flight

Section 3142(f)(2)(A) requires a court to hold a detention hearing upon a Government motion or the court's own motion in a case that involves "a serious risk that [the defendant] will flee." The Government argues that a detention hearing was authorized under § 3142(f)(2)(A) because Defendant presents a serious risk of flight. (Dkt. No. 3, at 7–9).

First, the Government cites Defendant's "significant family ties to China." (*Id.* at 7). Defendant's father is employed by a university in China and spends approximately half the year there. (*Id.* at 8). "His family has the resources to pay for [him] to fly to China to avoid prosecution, and they live 80 miles from the Canadian border." (*Id.*). Defendant responds that he "has traveled to China only once in his life when he was approximately 11 years old." (Dkt. No. 2, at 8). "[He] never wants to return to China and [] does not keep in touch with his family living there." (*Id.* at 9). Moreover, Defendant's parents "are not wealthy and do not have excess funds (much less the inclination) to send their child overseas." (*Id.*). And, in any event, "[Defendant] has turned over his passport to defense counsel." (*Id.*).

The Court agrees with Defendant that his ties to China, without more, do not make him a serious risk of flight. As Defendant points out, "[t]o conclude otherwise would allow any court to find that any defendant is a serious risk of flight if a close family member works in another jurisdiction and/or has family in another jurisdiction." (*Id.*).

The more difficult question is whether, as the Government also contends, Defendant's history of suicidal thoughts and suicide attempts makes him a serious risk of flight. The Government argues that Defendant "contemplated and attempted suicide when he thought he

might be held accountable for posting his threats. Now that he knows he will be held accountable

for his actions and clearly understands the gravity of the penalties he faces, there is no reason to

think that [he] won't again attempt to take his own life and possibly the lives of others in the

process." (Dkt. No. 3, at 9). The Government explains that in the weeks leading up to his arrest,

"Defendant . . . began exhaustively researching and contemplating the most effective ways to kill

himself" and "attempted to kill himself twice with a plastic bag and once with a bed sheet." (*Id.*).

It appears that only one of the cases cited by the Government supports its argument that a

detention hearing is authorized under § 3142(f)(2)(A) based on suicide risk. In *United States v.

Metz*, a magistrate judge did find that suicide risk could be a basis for a "risk of flight" motion

for a detention hearing under § 3142(2)(A). No. 12-mj-1193, 2012 WL 6632501, at *5, 2012

U.S. Dist. LEXIS 183442, at *13 (W.D.N.Y. Dec. 12, 2012). The other caselaw cited by the

Government, however, does not support its position. In *United States v. Wasendorf*, the court

explained:

> [A] determination regarding whether this case involves a serious risk that [the defendant]
> 'will flee' is not the same as determining whether there is a serious risk that [the defendant]
> will 'not appear.' The distinction is significant in this case because of the Government's
> concern that [the defendant] remains at risk for suicide. In determining whether there are
> any conditions which 'will reasonably assure the appearance' of Defendant—as required
> under the second step of the [§ 3142] analysis—Defendant's risk of suicide becomes
> relevant. However, regarding the first step—whether pretrial detention is even authorized
> [under § 3142(f)(2)(A)]—Congress has limited the inquiry to whether there is a serious
> risk Defendant 'will flee.'

No. 12-cr-2021, 2012 WL 4052834, at *6, 2012 U.S. Dist. LEXIS 130910, at *17–18 (N.D. Iowa

Sept. 13, 2012). Similarly, in *United States v. Krueger*, the magistrate judge considered the risk

of the defendant's suicide "in the context of assessing his possibility of non-appearance." No.

20242, 2013 WL 8584873, at *2, 2013 U.S. Dist. LEXIS 96053, at *6–7 (E.D. Mich. July 10,

2013). Therefore, while suicide risk is certainly an appropriate factor in determining whether to

order detention under § 3142(e)(1), there is a strong argument based on the plain language of the statute that suicide risk is not a basis for a detention hearing under § 3142(f)(2)(A). But here, because the Court has already concluded that a detention hearing was authorized under § 3142(f)(1)(A), the Court need not decide whether a detention hearing was also authorized under § 3142(f)(2)(A).

### B.   Detention

Once a court has concluded that a detention hearing is authorized, the court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.[4] 18 U.S.C. § 3142(g). If, based on an application of these factors, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant must be detained. 18 U.S.C. § 3142(e)(1).

A finding as to the appearance of the defendant must be made by a preponderance of the evidence, *Jackson*, 823 F.2d at 5, and a finding as to the safety of any other person and the community must be made by clear and convincing evidence, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). But the court need not find that both bases are established to order detention. *See* 18 U.S.C. § 3142(e); *United States v. Blanco*, 570 F. App'x 76, 78 (2d Cir. 2014). And the rules of evidence do not apply. *Ferranti*, 66 F.3d at 542; Fed. R. Evid. 1101(d)(3).

---

[4] The court may determine the weight to be accorded each factor. *United States v. Shakur*, 817 F.2d 189, 196 (2d Cir. 1987).

The Court has reviewed the complaint, (Case No. 23-mj-632, Dkt. No. 1), pretrial

services report, (Case No. 23-mj-632, Dkt. No. 13), detention hearing transcript, (Case No. 23-

mj-632, Dkt. No. 19), letters submitted on Defendant's behalf, (Case No. 23-mj-632, Dkt. No.

23), and all of the submissions by counsel (Dkt. Nos. 2–4; Case No. 23-mj-632, Dkt. Nos. 14–

15). The Court now considers each § 3142(g) factor in turn.

### 1.    Nature and Circumstances of the Offense Charged

"The Court must first consider the nature and circumstances of the offenses charged,

'including whether the offense is a crime of violence.'" *United States v. Choudhry*, 941 F. Supp.

2d 347, 350 (E.D.N.Y. 2013) (quoting 18 U.S.C. § 3142(g)(1)). Defendant is charged with

transmitting interstate threatening communications in violation of § 875(c), (Case No. 23-mj-

632, Dkt. No. 1), which is a crime of violence under the Bail Reform Act, *see, supra*, Part

III.A.1. Defendant is alleged to have posted online multiple threatening messages directed at the

Jewish community at Cornell University including violent threats to kill Jewish students, rape

Jewish women, and behead Jewish children. (Case No. 23-mj-632, Dkt. No. 1, at 5). One

message said, "gonna shoot up 104 west"—a kosher dining hall on Cornell's campus known to

be a gathering place for Jewish students; another message stated, "I will bring an assault rifle to

campus and shoot" Jews. (*Id.*). The messages were posted under screennames including "kill

jews," "Jew Crimes," and "hamas soldier." (*Id.* at 3). Because the crime with which Defendant is

charged is a crime of violence and given the specific and particularly violent nature of the

threatening messages underlying the charge, this factor weighs in favor of detention.

### 2.    Weight of the Evidence

"In assessing the weight of the evidence against [a] [d]efendant, it is important to note

that [the] [d]efendant is presumed innocent, and 'it is not the Court's role at this stage of the

proceedings to assess [the defendant's] guilt or innocence.'" *United States v. Mendez*, No. 19-cr-

245, 2020 WL 3263446, at *4, 2020 U.S. Dist. LEXIS 105823, at *12 (W.D.N.Y. June 17, 2020)

(quoting *United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016) (alteration in

original)). "This factor 'may be considered only in terms of the likelihood that the person will

fail to appear or will pose a danger to any person or to the community.'" *Id.* (quoting *United

States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008)).

      The Government characterizes the weight of the evidence against Defendant as

"overwhelming." (Dkt. No. 3, at 12). The allegations set forth in the complaint are "supported

both by [D]efendant's own audio and video recorded statements as well as a subsequent forensic

review of [D]efendant's electronic devices conducted pursuant to a federal search warrant." (*Id.*).

Defendant admitted to posting the threatening messages. (*Id.*). And some of the messages "were

traced back to [D]efendant's parents' house at a time he was residing and present there." (*Id.*).

Consequently, the Court, although mindful not to reach any conclusions about Defendant's guilt

or innocence, agrees with Magistrate Judge Dancks' assessment that "the weight of the evidence

is strong and supports detention." (Case No. 23-mj-632, Dkt. No. 18, at 5).

      **3.**    **History and Characteristics of Defendant**

      When reviewing the history and characteristics of a defendant, a court should consider

"the person's character, physical and mental condition, family ties, employment, financial

resources, length of residence in the community, community ties, past conduct, history relating

to drug or alcohol abuse, criminal history, and record concerning appearance at court

proceedings." 18 U.S.C. § 3142(g)(3)(A). "Good character, strong and lengthy ties to the

community, and a lack of drug abuse, among other characteristics, may suggest a . . . reduced

[risk of non-appearance]; by contrast, an absence of such ties, frequent travel, or strong

connections to foreign countries may suggest an increased risk of [non-appearance]." *Choudhry*,

941 F. Supp. 2d at 355 (citing *United States v. Sabhnani*, 493 F.3d 63, 76–77 (2d Cir. 2007)).

Suicide risk is also relevant in assessing the risk of non-appearance. *See Metz*, 2012 WL 6632501, at *5, 2012 U.S. Dist. LEXIS 183442, at *13 (ordering the detention of a defendant who had attempted suicide and noting the risk that if released he would attempt to commit suicide again and thus not appear as required); *Wasendorf*, 2012 WL 4052834, at *6, 2012 U.S. Dist. LEXIS 130910, at *17–18 (noting that "[i]n determining whether there are any conditions which 'will reasonably assure the appearance' of Defendant—as required under the second step of the [detention] analysis—Defendant's risk of suicide becomes relevant."). In evaluating the safety of any other person and the community, detention is appropriate "[w]here there is a strong probability that a person will commit additional crimes if released." *Colombo*, 777 F.2d at 98–99.

Defendant is a United States citizen and was born and raised in upstate New York. (Case No. 23-mj-632, Dkt. No. 14, at 2). He has maintained an apartment in Ithaca, New York, on and off since 2020 while attending Cornell. (Case No. 23-mj-632, Dkt. No. 19, at 51). And his parents and younger brother reside in the Rochester area. (*Id.*). His parents kept a shotgun and Katana sword at their residence at the time Defendant posted the threatening messages, (Dkt. No. 3, at 11), although the shotgun had never been opened or used and both weapons are now in the custody of law enforcement agents, (Dkt. No. 2, at 4).

Defendant's father is employed by a university in China and spends approximately half the year there. (Dkt. No. 3, at 8). Defendant has other relatives in China and his mother reports that in 2011 he traveled to China to visit them. (Dkt. No. 2, at 8.). While Defendant therefore has ties to a foreign country, the record indicates that his ties to the United States—and to upstate New York, in particular—are much stronger. Moreover, while Defendant is supported financially by his parents, who provide his monthly expenses for rent and food, there is no indication that

they are wealthy or have the inclination to send their child overseas. (*Id.* at 9). Since his arrest, Defendant has been cooperative and has turned over his passport to defense counsel. (*Id.* at 9–10).

However, while Defendant's ties to China do not appear to present a high risk of non-appearance and although the removal of the shotgun and Katana sword limits to some extent Defendant's immediate access to weapons, the Court must consider the Defendant's recent history of significant mental health issues—which the record indicates remain unchecked.

The letters submitted on Defendant's behalf do not, for the most part, address the mental health issues that surfaced in college; these letters primarily address Defendant's temperament and behavior before he began college. (*See generally* Case No. 23-mj-632, Dkt. No. 23). By all of these accounts, Defendant was a kind, compassionate, introverted, academically accomplished child who cared for his mother during a bout with cancer, volunteered at a hospital, and tutored classmates. (*See id.*). During this period of Defendant's life, his neighbors, family friends, and schoolmates did not see any inclination toward violence, and the threatening messages he allegedly posted appear to be entirely out of character. (*Id.*). At the same time, from these letters it appears that in high school Defendant was bullied and had few friends, and that he was having difficulty adjusting to college. (*Id.*). And the letters shed almost no light on Defendant's behavior from the time he began college in 2020—when his mental health issues apparently started—to the present.

Defendant sought a health leave of absence from Cornell in September 2022 due to symptoms of depression and reports that around that time he was diagnosed with major depressive disorder. (Case No. 23-mj-632, Dkt. No. 13). While he initially planned to return to Cornell in the spring of 2023, in February 2023 he submitted another request for a health leave of

absence due to anxiety and depression. (*Id.*). And even when Defendant was physically present at Cornell, he would return to his parents' residence on weekends, (*id.*), believing that the medication he was prescribed was not helping, (Dkt. No. 2, at 13).

Defendant reports a history of suicidal thoughts and suicide attempts. He unsuccessfully tried to kill himself on October 30 or 31, 2023, by asphyxiation by placing a plastic bag over his head, and previously attempted suicide with a bedsheet. (Case No. 23-mj-632, Dkt. No. 13). Defendant told law enforcement agents that he downloaded a book about effective ways to commit suicide. (Dkt. No. 3, at 13). This was corroborated by a forensic review of Defendant's devices, which revealed a download of a PDF titled "Suicide and Attempted Suicide Methods and Consequences." (*Id.*). Referencing the shotgun at his parent's home, Defendant told the agents that the most effective way of committing suicide would be by putting a gun to his mouth and firing a shot through his brain. (*Id.*). He also told the agents that he had considered committing suicide by grabbing the steering wheel when his mother was driving him home from Cornell and forcing the car off of a cliff. (*Id.*). And at the time of his arrest he stated, "Right now I couldn't guarantee that if I went home I wouldn't try to kill myself. You might have to lock me up for that. I don't mind. It's okay." (*Id.* at 14).

As Magistrate Judge Dancks explained, Defendant has for over a year had "active and ongoing significant mental health problems and symptoms which are not under control even with his current mental health treatment." (Case No. 23-mj-632, Dkt. No. 18, at 6). There is nothing in the record to indicate that his mental health has improved or is now under control. Having carefully reviewed the record, the Court agrees with Magistrate Judge Dancks' assessment that "Defendant is a very troubled young man who may have been bullied in the past and is currently in a downward spiral." (*Id.*). Accordingly, this factor weighs in favor of detention.

### 4.     Nature and Seriousness of the Danger

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). First, Defendant's release would unquestionably present a serious risk of danger to himself given his recent history of suicidal thoughts and suicide attempts. *See, supra*, Part III.B.3. Indeed, he told law enforcement agents at the time of his arrest, "Right now I couldn't guarantee that if I went home I wouldn't try to kill myself." (Dkt. No. 3, at 14).

Second, the Court must consider the risk that Defendant would post more threatening messages online if released. "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4, 2022 U.S. App. LEXIS 18922, at *10 (10th Cir. July 8, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)). As Magistrate Judge Dancks noted, "[Defendant's] threats alone represent a distinct harm to the community." (Case No. 23-mj-632, Dkt. No. 18, at 6). "Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear." *Capriotti*, 2021 WL 229660, at *5, 2021 U.S. Dist. LEXIS 12223, at *14. And, if released, "[a]ny access at home or elsewhere, even momentary access to virtually any internet-capable cell phone, computer, laptop, or similar electronic device, whether prohibited or not, would allow [D]efendant to create and post more violent threats." (Dkt. No. 3, at 14).

Third, distinct from the risk that Defendant would post more threatening messages online if released is a concern that Defendant would follow through on one. Although Defendant does not have a prior criminal record or any history of violence toward others, and while there is no

indication that he had any plan to act on any threat, he does have a history of violent ideation. He has seriously contemplated committing suicide, including with a shotgun and by grabbing the steering wheel when his mother was driving and forcing the car off of a cliff. And he has, in at least in two instances, attempted suicide.

Thus, after carefully considering all of the factors, the Court finds that the Government has shown by a preponderance of the evidence that Defendant poses a risk of non-appearance and by clear and convincing evidence that Defendant poses a danger to the safety of any other person and the community. And at the same time, the Court finds that no condition or combination of conditions can reasonably mitigate these risks.

No condition the Court could impose would address the "active and ongoing significant mental health problems and symptoms which are not under control even with his current mental health treatment." (Case No. 23-mj-632, Dkt. No. 18, at 6). It is also difficult to imagine a set of conditions that would prevent Defendant from accessing the internet. *See United States v. Cooper*, No. 19-mj-4254, 2019 WL 4259454, at *4, 2019 U.S. Dist. LEXIS 154354, at *8 (M.D. Tenn. Sept. 9, 2019) (noting that "threatening conduct [that] takes place on the internet [] is particularly difficult to control with conditions of pretrial release"). And while the Court acknowledges and appreciates Defendant's mother's commitment to her son and his wellbeing, many of the threatening messages were allegedly posted from her home. *See United States v. Kaetz*, No. 20-cr-1090, 2021 WL 37925, at *8, 2021 U.S. Dist. LEXIS 637, at *18–19 (D.N.J. Jan. 4, 2021) (noting that "[t]he suitability of a custodian is a relevant consideration in determining whether pretrial release is warranted" and ordering the detention of a defendant who committed offenses while living in the proposed custodian's home).

Based on the foregoing, Defendant's appeal is denied.

## IV.    CONCLUSION

For these reasons, it is hereby **ORDERED** that Defendant shall remain detained pending the trial in this matter.

**IT IS SO ORDERED.**

Dated: <u>December 19, 2023</u>
　　　Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge